### In re OFFRICHT et al.

(District Court, W. D. Texas. February, 1919.)

1. BANKRUPTCY ⬤⟷345—PROPERTY ACQUIRED WITH CONCEALED ASSETS SUBJECT TO RIGHTS OF CREDITORS.

Where a bankrupt concealed money from his trustee, with which he purchased a stock of merchandise and conducted business in the name of another, debts contracted in the name of such other in the course of the business *held* entitled to priority of payment from the proceeds of the property.

2. BANKRUPTCY ⬤⟷474—COSTS OF ADMINISTRATION ON REMOVAL OF ASSETS TO ANOTHER DISTRICT.

Where a bankrupt with concealed assets purchased and conducted a business in another district in the name of another, who afterward went into bankruptcy, the cost of administration of both estates in that district *held* payable from the proceeds of the property therein.

In Bankruptcy. In the matter of Paul Offricht and David Lacher, bankrupts. On review of order of referee. Affirmed.

The opinion of Referee Woodward in this cause follows:

#### Findings of Fact.

In the fall of 1916 Paul Offricht was adjudicated a bankrupt in the Dallas Division of the District Court of the United States for the Northern District of Texas and Geo. F. Rockhold, Esq., was appointed trustee of his estate. Prior to his adjudication Offricht had been engaged in the mercantile business at Greenville, Tex., and immediately prior thereto he had conducted a sacrifice cash sale which was followed by a midnight fire of unknown origin. He has been examined a number of times under oath, both before me and before the referee at Dallas, and his testimony concerning the events leading up to his failure is voluminous, and as to all essential matters untrue.

I find as a matter of fact that the bankrupt Paul Offricht secreted and withheld from his trustee in bankruptcy a large sum of money amounting to at least $5,500. The testimony of his unfortunate wife, who has died since the hearing was held, as to the source of the sum of $5,500 which went into the purchase of the Giddings stock, which will be hereafter referred to, is manifestly false in toto, and I disregard it entirely. It was procured through the efforts of Offricht as a part of his scheme to conceal his assets from his trustee.

The bankrupt D. Lacher was a Dallas junk dealer, without experience in the mercantile business. He was a friend of the Offricht family of many years' standing, and was selected by them as an accomplice in their efforts to conceal from the trustee of Offricht's estate the money belonging to him. His testimony to the contrary is unworthy of belief, and I attach no importance to it. The details of the arrangement between Offricht and Lacher have not been disclosed, because neither bankrupt has been willing to testify the truth re-

⬤⟷For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

garding them; but I find as a fact that Offricht furnished the whole $5,500 which went into the purchase of the Giddings stock (being money which he had secreted from his trustee), and that Lacher was to be compensated by some character of interest in the profits the exact nature of which is not material. The contract of employment prepared in the office of one Garonzik was a simulated transaction in furtherance of the conspiracy.

In February, 1917, Offricht and Lacher purchased with this $5,500 a bankrupt stock at Giddings, Tex. The whole transaction was in the name of Lacher who executed notes for a small balance of purchase money, which notes have been paid out of the business. Offricht forthwith took charge of the business, ostensibly as manager for Lacher, and conducted same for about a year, in the course of which Lacher paid no attention to it, notwithstanding he swore that it represented the investment of the savings of his lifetime.

In the spring of 1918 Lacher went to Giddings and asserted rights in the business. A difference arose between him and Offricht, but the facts concerning it are shrouded in a maze of perjury. It appears to have grown more acute until July 5th, on which date Lacher, in an unguarded moment of truthfulness, wired the attorney for the trustee of Offricht's estate to come to Giddings and take Offricht's store. The telegram in question was made the basis of a summary ancillary proceeding, in which J. T. Robinson, of Lee county, was by the court appointed receiver of the Offricht estate in the Austin Division of the Western District of Texas. The receiver was appointed July 18, 1918, and qualified on the same day.

On July 25, 1918, D. Lacher, claiming to be the owner of the Giddings business in his name, filed his voluntary petition in bankruptcy, and at the first meeting of creditors A. Robinson, of Travis county, was appointed trustee of his estate. By agreement of all parties the trustee of the Lacher estate was ordered to sell all assets connected with the Giddings business and to deposit the proceeds in a special fund; such sale to be made without prejudice to the rights of either estate in such proceeds. The receiver of the Offricht estate was directed to co-operate in making such sale and did so. The sale netted $8,050.06; being 70½ cents on the invoice price, was duly confirmed. That sum, together with $69.80 collected on outstanding accounts, making $8,119.86 in all, is in the special account referred to. There was practically no other assets.

Between the date of the opening of said business at Giddings and the closing of the same, shortly prior to bankruptcy, numerous parties sold goods to the business upon credit, or rendered services which have replenished and conserved its assets. But for the furnishing of such credit the business could not have been operated, and the whole sum unlawfully invested in it by Offricht would have been lost. On October 17th, after full hearing, the relative rights of the two estates were adjudicated, as more fully appears from order of that date, and due notice of the entry of such order was sent by mail to every creditor of D. Lacher, as well as to the trustees and the receiver aforesaid, and their attorneys of record.

The trustee and the receiver of the Offricht estate alone seek a review of such order; the same having, by its terms, become final as to all other parties.

## Conclusions of Law.

I conclude as a matter of law that the business at Giddings, operated in the name of D. Lacher, in fact belonged to Paul Offricht, and that said Paul Offricht was constructive trustee of such business for the benefit of his trustee in bankruptcy, subject, however, to the satisfaction in full of all claims incurred by said business in replenishing and conserving its assets. I further conclude that all costs legally incurred in administration of both estates in the Western District of Texas should be paid in full out of said fund. No briefs have been filed, and few cases of value cited on oral argument.

The representatives of the Offricht estate have advanced the doctrine of confusion of goods as bearing upon the question at issue. It seems to me to be entirely without bearing. There is no question here of any one's right

to recover property to which he has title, but which, without his fault, has been commingled with other property. On the contrary, title to all goods sold to the Giddings business was intended to and did pass to the owner of that business. The sellers parted with their title and assumed the status of creditors instead of owners.

The receiver and trustee of the Offricht estate are, in equity, the owners of all of the assets of the business by virtue of being the sole beneficiaries of the constructive trust under which Offricht held the property; but as beneficiaries under that trust they must take the property as they find it—that is, subject to the claims of all creditors who in good faith have performed services or furnished goods which have conserved or replenished the trust estate.

The reason for the rule is apparent. It is found in the circumstances under which the business was conducted. It was bought practically a year and a half before bankruptcy, and it would undoubtedly have been wholly dissipated and its value lost to the Offricht estate, but for goods and services furnished in the interval. The trust estate was constantly changing in value as goods were bought and sold, but it remained none the less a trust estate. It was an entity, and was worth on any particular day the difference between the value of its assets and the amount which it owed.

The only person who had the right to terminate the trust as against Offricht was his trustee, Mr. Rockhold. He had the power at any time by proper proceedings to oust Offricht and wind up the business. If he failed to do this through many months, and the trust estate was thereby somewhat diminished, he cannot complain, especially as against those who in good faith contributed to the maintenance of the trust estate in the interval. Under the order complained of he has been awarded the entire net trust estate. No theory has been suggested under which he should receive more.

S. A. Leake, of Dallas, Tex., for receiver and trustee Rockhold.
H. A. Hirschberg, of San Antonio, Tex., and M. H. Goldsmith, of Austin, Tex., for trustee Robinson.
John D. Hartman, of San Antonio, Tex., for bankrupt Lacher.

WEST, District Judge. [1, 2] Upon considering the petition filed by George F. Rockhold, trustee of the estate of Paul Offricht, bankrupt, No. 1315, Bankruptcy, pending in the Northern District of Texas, at Dallas, Tex., and J. T. Robinson, receiver in said cause, to review the order of the referee made in this cause on October 17, 1918, adjudging that the liquidated assets of Paul Offricht, bankrupt, in cause No. 780, Bankruptcy, in this court, constitute a fund subject to the payment of costs legally incurred in the administration of both of said bankrupt estates in this district, and subject further to the payment in full of all claims incurred by the business conducted under the name of D. Lacher in conserving and replenishing its assets, the court being of opinion, after due consideration of the record submitted, which embraced the testimony taken before E. M. Baker, referee for the Northern District of Texas, and that taken before D. K. Woodward, Jr., referee in bankruptcy at Rustin, together with briefs of counsel, that the order of the referee was correct:

It is therefore ordered that the said order of the referee, made and entered herein on October 17, 1918, be, and the same is hereby, in all things affirmed, and that said fund realized from the sale of the property of the bankrupt Paul Offricht, consisting of certain merchandise situated at Giddings, Tex., stand as a fund subject to the payments as

ordered by the referee, and the remainder thereof, if any, to be administered by the trustee herein, A. Robinson, as part of the estate of said Paul Offricht, bankrupt.

The clerk will duly enter this order of record at the Austin Division of the court, and return to the referee at said Austin Division the record on petition for review, together with a certified copy of this order for his observance.